WENDELL *vs.* Jackson, ex dem. THE PEOPLE.

Where a tract of land in a patent from the state is described as beginning at the corner of another tract, and the determination of the third course given in the grant is described in *another patent* issued *seven days* afterwards, as a *clump of rocks* on the *shore of a lake,* if the corner mentioned as the *place of beginning* is sufficiently ascertained by proof, the *location* of the premises granted must be made by commencing at such corner, although in doing so, by pursuing the courses and distances, the *clump of rocks* will not be reached, the third course will be shortened one half, one whole course will be lost, one end of the tract thrown into the form of an acute angle, instead of having a base of 50 chains, and the quantity of land be reduced nearly one half.

When the *courses, distances* and *quantity* of land contained in a grant, correspond with the natural or artificial monuments or boundaries given, it is immaterial at what angle of the premises a survey is commenced; but where a practical location cannot be made to correspond with *all* the *calls* in the grant, it is necessary to run around the premises in the direction indicated by the description in the grant, especially where some of the angles of the lot are not marked by natural or artificial monuments.

In the construction of grants both course and distance must give way to natural or artificial monuments or objects, and courses must be varied, and distances lengthened and shortened, so as to conform to the natural or ascertained objects or bounds called for by the grant.

In an *action of ejectment* by the people for the recovery of lands, proof that the premises claimed were *vacant* and *unoccupied,* within the period necessary to be shewn to establish an *adverse possession* against the people, is *prima facie* sufficient to entitle the plaintiff to a recovery.

ERROR from the supreme court. This was an action of ejectment brought by the attorney-general in the name of the people, to recover 21 acres of land in the county of Warren. The proof of title on the part of the plaintiffs was, that 30 years before the trial the premises were *vacant* and *unoccupied* lands; that 2 years afterwards, one Ruel went into possession of the land under a pretended contract and made a clearing to whose possession the defendant succeeded. The defendant claimed that the premises were included either in a tract called Road patent No. 2, or in another tract called the Hoffman township; the first having been granted by the state on the 8th May, 1795, and the secoed on the 15th May, 1795, and the right of the parties turned upon the true location of these patents.

The Road patent is described as "beginning at the eastern-most corner of township No. 24, of Totten and Crosfield's purchase, and running thence along the same, north 31 deg. 15 min. west 330 chains, thence north 40 deg. east 105 chains 50 links, then south 50 deg. east 153 chains to Scaroon Lake, then across the same south 6 deg. 45 min. east 240 chains, thence south 58 deg. 45 min. west 50 chains to the place of beginning, containing 3500 acres exclusive of the waters of the lake." The Hoffman township is thus described : "Beginning at a large clump of rocks on the west bank of the Scaroon Lake, at the *northeast corner of a tract of* 3500 *acres* of land granted to John Thurman, (being the tract designated as Road patent No. 2,) running thence north 50 deg. west-153 chains, thence south 40 deg. west 105 chains and 50 links to the northeast bounds of township No. 24 in Totten and Crossfield's purchase, then, &c." Two witnesses testified that they *knew* the *southeast corner of township No. 24*, in Totten and Crossfield's purchase, that it was designated as a stake and stones, was in a large swamp or marshy land, and to get the east line of that patent, you must take an offset as you cannot run through the swamp. Commencing at this point, and running the *first* and *second* courses, according to the distances given in the Road patent, the *premises in question are excluded* from that patent, but the consequence of assuming the point described by the witnesses as the southeast corner of No. 24 of Totten and Crossfield's purchase, and commencing there the survey of the patent, is that running the third course in the road Patent according to the point of compass given therein, the distance to the Scaroon Lake is not more than about *one half the number of chains* given in the patent, and running the fourth line from the termination of the third, the first line is crossed above its place of beginning ; the last course and distance which by the patent gives a base of 50 chains is *totally lost,* and the quantity of land in the Road patent falls short nearly one half of the number of acres specified in the grant. A survey made upon these principles by G. Webster, a state surveyor, was contended on the part of the people to have been correctly made. On the part of the defendant it was insisted that in locating the Road patent, the *clump of rocks* mentioned in the

patent called the *Hoffman township*, ought to be assumed as the *place of beginning*, and from that point the courses and distances ought to be *reversed ;* the consequence of which would be, that the two first courses and distances in the Road patent would correspond with the two first courses and distances in the *Hoffman township ;* every course and distance in the Road patent would be satisfied, and the quantity of land included, granted by the patent. According to the location contended for by the defendant, the *premises in question* are embraced in the Road patent, and the *southwest* corner of the tract is fixed at a point nearly a mile north of the point assumed by the attorney-general as the easternmost corner of township No. 24 of Totten and Crossfield's purchase. The judge at the circuit charged the jury, that if they should find that the easternmost corner of township No. 24, was a certain and ascertained boundary, and that in the survey of the Road patent commencing at that point, and running the two first lines described in the Road patent, no part of the premises in question would be included, then the *clump of rocks* mentioned in the description of the Hoffman township would not control the location of the Road patent so as to affect the premises in question, and that the plaintiffs would be entitled to their verdict. The jury found for the plaintiffs. The defendant having excepted to the charge of the judge, moved the supreme court for a new trial, which motion was denied, and judgment given for the plaintiffs. The defendant sued out a writ of error. See case and opinion of supreme court, 5 Wendell, 142 to 148.

The cause here was argued by

*J. L. Wendell & D. Russell*, for the plaintiff in error.

*G. C. Bronson*, (attorney-general) for the defendants in error.

*Points urged in behalf of the plaintiff in error :*
1. If a defendant in an ejectment suit succeeds in showing title out of the lessor of the plaintiff, there can be no recovery

ALBANY,
Dec. 1831.

Wendell
v.
The People.

against him, as the plaintiff must succeed on the strength of his own title, and not on the weakness of the title of his adversary.

2. In the. location of a grant, a permanent natural boundary controls courses, distances, and every other description, unless other particulars to which reference is had.are equally certain to show the intention of the parties.

3. A reference by a party in a solemn grant to a *permanent natural boundary*, as the *corner* of a tract of land granted but seven days before, is conclusive evidence of the intent of such party as to the location of the premises intended to be conveyed by the former grant.

4. *A large clump of rocks* on the shore of a lake is a much more definite object than a stake and stones in an inaccessible swamp.

5. The premises. in question are clearly. within *Road patent* No. 2, granted to John Thurman on the 8th ·day of May 1795, as is manifest from the patent of the *Hoffman township* granted the 15th day of May, 1795, which in the first and second courses and distances corresponds precisely with the second and third lines in the Road patent No. 2, and thus shews that the clump of rocks is the northeast corner of Road patent No. 2.

6. When witnesses speak of a corner of a tract of land as known by them, which is only designated as a stake and stones in a swamp, without shewing they had *the means of knowledge* by actual survey or otherwise, they must be understood as expressing only a vague belief or impression, and not as testifying according to knowledge.

7. The judge erred in instructing the jury that from the evidence they were warranted in finding that the stake and stones in the swamp, which he assumed to be the *easternmost* corner of township No. 24, was a *certain* and *ascertained* boundary, when no evidence had been given shewing it to be *certain* and *ascertained;* and when the grant of the Hoffman township clearly shewed that it could not be where the witnesses supposed it to be.

8. The place of beginning of a tract, although clearly established, has no more control in the location of the tract than *any other designated point;* on the contrary, if the place of beginning is an *artificial* and *frail monument,* and another

point in the description is a *natural monument*, the latter and not the former will control; because, in seeking *for the intent of parties*, that evidence which is least liable to mistake ought to have the preponderance.

9. A grant will be so construed as to give effect to *every part of it;* unless the construction of the defendant prevails, the quantity of acres in the *Road patent* falls short nearly *one half*, the third line of the patent is too short by nearly *one half*, the fourth line crosses the first line above the place of beginning, and one whole course and distance (being the south line of the patent) is lost.

*Points urged in behalf of the defendants in error:*

1. The questions of fact in relation to the location of the road patent, were properly submitted to the jury by his honor the judge.

2. The jury by their verdict have found, *First*, That the place of beginning, the eastermost corner of township No. 24, mentioned in the road patent, was a certain and ascertained boundary; and *Second*, That commencing at that place, and running the two first lines described in the Road patent, no part of the premises in question are included; and those questions are not open for discussion in this court.

3. The judge correctly instructed the jury, if they found the two questions submitted to them in favor of the plaintiffs, that the "clump of rocks" mentioned in the description of the Hoffman township, could not control the location of the road patent, so as to effect the premises in question. No possible mode of running the third and subsequent lines mentioned in the road patent can reach the premises in question. *First.* The "clump of rocks" is not mentioned in the description of the Road patent, and its mention in the description of the Hoffman township cannot control the location of the patent. *Second.* If the "clump of rocks" is at all to be regarded, it can have no greater influence than it would have had, if it formed a part of the description of the Road patent; and in that case it could only affect the termination of the third line described in the patent, and would not aid the plaintiff in error in relation to the premises in question.

4. The place of beginning is a material boundary, and cannot be rejected in locating the patent.  No certain or well ascertained boundary, whether natural or artificial, can be rejected because it does not agree with the given course or distance ; but both course and distance yield to such boundary.

5. Where (as in this case) courses and distances, or other known boundaries, are given in the deed, they will control the location, without reference to the quantity of land mentioned in the grant.

The following opinions were delivered :

By the CHANCELLOR.  The people of this state, upon the declaration of independence, succeeded to all the rights of the crown, and they are the owners of all the lands within the limits of the state, except such as have been granted to others, or where their title has been lost by adverse possession. Where lands have never been granted by them, they are presumed to be the owners until the contrary appears ; and in such cases, they can give no other evidence of their title than that produced on this trial.  The attorney-general proved that the premises in question were vacant and unoccupied thirty years before the trial, and that the first clearing thereon was made about 24 years previous to the commencement of the suit, which had been pending four years at the time of the trial in June, 1829.  This was presumptive evidence of right in the people of this state at the time Ruel, under whom the defendant claimed, went into possession.  As that possession had been held adversely to the rights of the people, sixteen years short of the period then limited for the bringing of actions by them, it became necessary for the defendant to show title out of the state to rebut that presumption.

As the patent for the Hoffman township does not profess to be bounded on Road patent No. 2, except at the *clump of rocks*, it is evident that the premises in question do not lie within the bounds of that township, which must be run according to the courses mentioned in that grant, beginning at the clump of rocks, and terminating the second course at the northeast bounds of township No. 24.  The plaintiffs were therefore en-

titled to recover, unless the defendant succeeded in showing the premises in Road patent No. 2. That tract, as described in the patent to Thurman, begins at the *easternmost corner of township* No. 24, of Totten and Crossfield's purchase, and runs thence along the same, north 31 deg. and 15. min. west, 330 chains; thence north 40 deg. east, 105 chains and 50 links; thence south 50 deg. east, 153 chains to Scaroon Lake; thence across the same, south 6 deg. and 45 min. east, 240 chains; thence south 58 deg. and 45 min. west, 50 chains to the place of beginning, containing 3500 acres, exclusive of the waters of the lake. It is evident from the testimony in this case that the patent cannot be located on the land so as to correspond with the fixed boundaries, the courses, distances and quantity of land mentioned in the description; and even if we adopt the *clump of rocks* as the termination of the third course, it will not remedy the difficulty, as that would only control the course and distance of the third line, change the location of the fourth, and the location, direction and length of the fifth. Where the courses, distances and quantity of land contained in a grant correspond with the natural or artificial monuments or boundaries referred to in the description of the premises, there can be no difficulty in making a practical location of the grant; and it makes no difference at what angle of the premises the surveyor begins, or whether he runs backward or forward, provided he reverses the points of compass when he runs around the land in a different direction from that described in the grant. But when a practical location of the premises cannot be made to correspond with all the calls in the grant, certain legal rules must be observed as to *rejecting* some calls and *retaining* others; and it also becomes necessary to run around the premises in the direction indicated by the description in the grant, especially where some of the angles of the lot are not marked by natural or artificial monuments.

Where several particulars are given, all of which are necessary to ascertain the land intended to be conveyed, nothing but what will correspond with all those particulars will pass by the grant. Thus, if land is conveyed by metes and bounds, without any other description to ascertain the premises, it

must be located by those boundaries, although it contains either more or less than the quantity supposed to have been contained within those boundaries, *Jackson* v. *Sprague*, 1 Payne's R. 494; *Powell* v. *Clark*, 5 Mass. R. 355; *Jackson* v. *Barringer*, 15 Johns. R. 471; but if there be certain particulars sufficiently ascertained to locate the grant, the addition of a false or mistaken particular or boundary may be rejected. Thus, in *Jackson* v. *Loomis*, 19 Johns. R. 449, where the lot was described by a wrong number, yet being also described by fixed and known monuments, this court decided that the number of the lot might be rejected; and in *Jackson* v. *Marsh*, 6 Cowen, 281, where the lot was correctly described by its number, but there was a mistake as to one of its boundaries, the supreme court decided the lot might be located by its number and by the reference to the map on file, and that the mistaken corner might be rejected. Where there is nothing in the conveyance to control the call for course and distance, the land must be run according to the course and distance given in the description of the premises. But all grants or conveyances are supposed to be made with reference to an actual view of the premises by the parties thereto, and it is therefore a general rule in the construction of grants that both course and distance must give way to natural or artificial monuments or objects; and courses must be varied, and distances lengthened or shortened, so as to conform to the natural or ascertained objects or bounds called for by the grant. *Dogan* v. *Leekright*, 4 Hen. & Munf. 125. *Doe* v. *Thompson*, 5 Cowen, 371. *McIver's lessee* v. *Walker*, 4 Wheat. R. 444. And any visible or defined object, fixed upon by the terms of the grant as the boundary or locative call of the premises, such as a marked tree or clearing, the corner of a lot or the land of another person which is certain and notorious, must be adhered to in the location of the grant, although it does not correspond with the course, distance or quantity, which must all give way to such known boundaries. *Jackson* v. *Widger*, 7 Cowen, 723. *Pernam* v. *Wead*, 6 Mass. R. 131.

The question was fairly submitted to the jury in this case to determine whether "the easternmost corner of township No. 24," described as the place of beginning in the patent to Thur-

man, was a certain and ascertained boundary, and I think they could not have found otherwise than they did, from the evidence before them. If this place of beginning is rejected there is nothing in the description which would enable a surveyor to locate the patent. The only legal mode of locating this patent appears to he that adopted by Mr. Webster, the state surveyor. The place of beginning being ascertained, the first line must be run from thence northwesterly, *along the line of the township*, 330 chains ; and the second line having nothing to control the course or distance, must be run conformably to both. This will necessarily exclude the premises in question, whether the third line is run to the clump of rocks, referred to in the patent for the Hoffman township, or directly to Scaroon Lake in the direction indicated by the patent to Thurman. The judge, therefore, was perfectly correct in telling the jury that the clump of rocks would not control the location so as to affect the premises in question, and it was therefore not necessary for him to decide the question whether the clump of rocks could be considered as one of the boundaries of road patent No. 2.

Although my present impressions are, that Webster's survey was correct as to all the lines of this patent, the question as to the correctness of his location of the three last lines does not arise in this case. It is therefore unnecessary that we should pass upon that question.

I have no doubt of the correctness of the decision of the supreme court in this case, and I shall therefore vote for an affirmance of the judgment

By Mr. Senator WESTCOTT. The decision of this cause depends upon the construction to be given to the wording of a patent granted to John Thurman, on the 8th day of May, 1795, known as road patent No. 2, in the county of Warren. The first object in settling the location of the patent in question, is to ascertain with sufficient certainty the first station in the lines of the patent, which is described to be at the easternmost corner of township No. 24, of Totten & Crossfield's purchase. All the testimony which goes to settle the position of the easterly corner of township No. 24, describes it as a stake

and stones, or a marked tree, in an inaccessible swamp, designated on a map produced at the argument as point D; no other location is proved or alleged. If this station be adopted as the beginning of the patent, the length of chain of the first course given will not reach the land in dispute, and will exclude it from the patent; of course it remains as unsold lands belonging to the state, and leaves Levinus Wendell without title to it. But the defendant objects to the station fixed by the evidence, as to the starting point in the patent, for the following reasons, viz. that it is absolutely impossible to locate the patent according to the courses and distances given, if the survey be commenced at the point D. The first line of north 31 deg. 15 min. west, 330 chains, presents no difficulty. The second line also, of north 40 deg. east 105 chains 50 links, may be found; but the third course on the map from F. to G. being south 50 deg. east 153 chains to Scaroon Lake, is less than 76 chains by actual measurement, falling short about one half the distance given in the patent. From this station G. on the margin of the lake, the patent directs that the fourth line be run across the lake on a course south 6 deg. 45 min. west two hundred and forty chains, which last mentioned line, if continued far enough, according to the location contended for in behalf of the plaintiffs, would cross the first line before coming to, or opposite to the first station D; and the last and closing line in the patent being south 58 deg. 45 min. west fifty chains to the place of beginning, is wholly lost. The consequences resulting from these difficulties are, that the map cannot be closed according to the description in the patent, and more than one half the land mentioned in the grant will be lost to the patentee.

The plaintiff in error insists that the true starting point intended in the patent, is about one mile north of station D in the easterly line of township No. 24, and that by adopting that position the whole of the lines may be run in strict accordance with the courses and distances given in Road patent No. 2, and without trenching upon the individual rights of any claimants. But this starting point seems designated by calculation, and not by any positive or direct testimony. The grounds upon which this station is assumed, result from a de-

ALBANY,
Dec. 1831.

Wendell
v.
The People.

scription given in a patent bearing date seven days subsequent to the date of road patent No. 2, called the Hoffman patent. The starting point given in the Hoffman patent is described to be a large clump of rocks, on the west bank of the Scaroon Lake, *at the north-east corner of the Road patent No. 2*, by which it seems probable that the starting station mentioned in the Hoffman grant, and the station G. in Road patent No. 2, is the same, and by running from thence northerly according to the directions in the Hoffman patent, the two patents will be found bounded by each other on the easterly and northerly sides of the Road patent, the two grants agreeing precisely in courses and distances, without the possibility of a gore. By adopting, then, the two first lines in the Hoffman grant, as the third and second lines in the Road patent, the remaining lines of this patent may be run according to the description contained in it; the plot may be closed, and the complement of land included. But upon this hypothesis, the patent would not approach nearer than about one mile to the monument proved to be the easterly corner of township No. 24, in Totten & Crossfield's purchase, as mentioned in the Road patent.

In deciding this case, it appears to me, two difficulties are presented, wholly irreconcileable. If the station D. be taken as the starting point, the patent cannot be closed, nor more than half the quantity of land included; and if that station be rejected, the proof must be wholly disregarded, so far as regards the location of the corner of township No. 24. By abandoning D. as the starting point, justice may be done to all parties; by retaining it, injustice will be done to the patentee, or greater violence must be done to the wording of the grant in the description of its lines. Notwithstanding there is some discrepancy in the testimony, I consider the corner of township No. 24 established with reasonable certainty; but at the same time the evidence contained in the patent is, at least, equally entitled to consideration and credit; and where the two are incompatible, it may be safer to rely on a solemn record, than on the less certain testimony derived from recollection, or professional accuracy.

Upon the whole, I am in favor of the location contended for by the plaintiff in error; and of course, my opinion is, that the judgment of the supreme court ought to be reversed.

On the question being put, *Shall this judgment be reversed?* *five* members expressed their opinions in the affirmative, and *fourteen* in the negative. The members who were in favor of a reversal were Senators FULLER, REXFORD, SANDFORD, WARREN and WESTCOTT.

Whereupon the judgment of the supreme court was *affirmed.*