MEAD, plaintiff in error, *agt.* LAWSON, defendant in error.

*Questions discussed.*

1. Whether a written contract for the sale of land was void for uncertainty, in the *description* of the land contracted about?

2. Whether if the description of the premises was ambiguous, it was competent for the court to receive evidence of extrinsic circumstances to sustain the contract?

This was an action brought by Mead against Lawson for a breach of contract for the purchase of land lying in the town of Coeymans, Albany county, commenced in a justice's court, and brought to the Albany common pleas by appeal, and tried on the 17th of September, 1844.

The plaintiff on the trial of this cause in the court of common pleas produced and read to the court and jury a contract made and executed by and between the plaintiff and the defendant, the execution of which contract was admitted by the counsel for the defendant, and of which the following is a copy:

Articles of agreement made the 30th day of October, 1841, between David Mead of the town of Coeymans and county of Albany, and James Lawson of the same place witnesseth, that the said David Mead hath this day sold a certain piece of land situate in said town, supposed to contain about six or eight acres of land, commencing at John Mead's line, at a stone marked J. L., from thence easterly to Henry Keefer's line, and said James promises, and agrees to pay to the said David, in consideration for said premises, three hundred dollars, lawful money of the state of New-York, on the delivery of a deed sufficient in the law for holding real estate, said deed to be executed and ready for delivery within thirty days. In witness whereof, the parties have interchangeable set their names interchangeably.

DAVID MEAD.

JAMES LAWSON.

The plaintiff then called *John Mead* as a witness, who testified that he was a brother of the plaintiff, and knew the piece

of land described in the contract; he drew a deed of it from the plaintiff and his wife to the defendant : the deed was then produced and identified by the witness and read in evidence. It was dated the 23rd November, 1843, and described the land as follows : " Beginning at a stone set in the ground, marked J. L. as a corner stone between John Mead and James Lawson, from thence easterly to Henry Keefer's line, thence north along the said line till it intersects a lot of land in the possession of the heirs of Levi Blaisdell, thence west along the said line of the said heirs of Levi Blaisdell and the said Lawson, till it intersects a lot of land that formerly belonged to John Mead, and some time last summer was sold and conveyed to the said James Lawson, thence along the said line of the said David Mead and the said James Lawson, to the place of beginning to the said corner stone marked J. L., supposed to contain six or eight acres." The witness said that the next morning after the deed bears date he and the plaintiff went and tendered the deed to defendant Lawson, who said he would not have anything to do with it. The witness said he drew the description in the deed of the lot by the boundaries given in the contract as far as they went, and then added the additional boundaries, well knowing the piece of land, and bounded part of the lot by his own knowledge of the piece of land. The plaintiff's counsel put this question to the witness : Did you describe in the deed the same piece of land described in the contract? The question was objected to, and the objection sustained, and the question overruled by the court, and the plaintiff excepted. The plaintiff's counsel asked the witness, How much land has your brother there? which question, after objection, was overruled by the court, and the plaintiff's counsel excepted. The plaintiff's counsel then asked the witness, Did the premises in question include all the land your brother owned there, or were they part of a larger lot? This question, after objection, was overruled by the court, and the plaintiff's counsel excepted. The counsel for both parties then admitted, that drawing a line, commencing at the stone marked J. L., in John Mead's line, and extending due east to Henry Keefer's line, leaves a lot be-

longing to the plaintiff on the north side of said line of four acres and seven tenths of an acre of land, and on the south of that line of fifty acres. A map was then introduced, showing the shape and form of the premises owned by the plaintiff on both sides of the line above mentioned. Witness testified that he knew where the stone marked J. L. stood; it was the corner stone between his land, Lawson's, and his brother the plaintiff. The plaintiff's counsel then offered as evidence, and proposed to prove by the witness, that a short time before the date of this contract the defendant had purchased a piece of land of the witness, lying directly west of and adjoining the lot of plaintiff, lying north of the line running from the stone J. L. to Keefer's line, of the same width with the piece of land lying north of that line, and that the stone marked J. L. was the south-east corner of that piece of land as marked out on the map above mentioned; to all and every part of which the counsel for the defendant then and there objected, on the ground, first, that the facts offered to be proved could not be proved by parol; secondly, the testimony offered was irrelevant, and the objection was sustained by the court on these grounds, to which the plaintiff excepted.

The plaintiff's counsel then inquired of the witness, Does the four and seven-tenths acre lot make Lawson's land square? This question was, after objection, overruled by the court, and the plaintiff excepted.

On his *cross-examination* witness said, the four seven-tenth acres and the fifty acres was a whole field, not fenced apart at all; he did not know where the line, from the stone J. L. east or easterly, would strike the line of Henry Keefer's; never saw such a line, and never knew of its being run; thought the deed did not contain or convey the whole of the cleared field, the cleared field contained about an acre more than the deed; to take in all the cleared field would make a crooked line; a line due east would take off some woodland.

This is the substance of the testimony by the only witness sworn on the trial. The defendant moved for a nonsuit on the grounds, *First*, That the contract, as proved, was void on its

Mead *agt.* Lawson.

face; *Second,* That if valid, the plaintiff had proved no damages, and was entitled only to nominal damages, which was six cents, and was equivalent to a nonsuit. The court sustained the motion, and nonsuited the plaintiff, whereupon the plaintiff excepted.

The plaintiff brought a writ of error, and removed the judgment to the supreme court, where, in May term, 1846, it was affirmed.

NELSON, Ch. J., delivered the opinion of the court, as follows: "The contract is void for uncertainty in the description of the premises; a location must depend altogether upon conjecture—nothing but the starting point, and one line is given from which to ascertain the boundaries, and even the course of that line quite indefinite.

"The description of premises, to which any effect can be given, must be either perfectly certain of itself, or capable of being made so by a reference to something extrinsic the contract. (13 *J. R.* 300.) Here nothing is referred to extrinsic by which to define the parcel—everything is blank in and out of the agreement. It is impossible to say on which side it lies of the line given. That the parties knew the localities, or parcel contracted for, is nothing; the question is, have they sufficiently described it in the written instrument, which is alone the only competent evidence of their object and intent in the matter; and bringing the case down to this test, it is impossible to entertain a doubt about it. *Judgment affirmed.*"

The plaintiff, Mead, brought a writ of error, and removed the judgment into this court.

*Wheaton, Doolittle & Hadley, attorneys and*
*Henry G. Wheaton, Counsel* for plaintiff in error.

*First.* Every contract fairly made between the parties to it, should be carried into effect, unless some insuperable objection intervenes to prevent it. "*Ut res magis valeat, quam pereat.*" (25 *W.* 402; 21 *do.* 651.)

*Second.* No contract should be held void for ambiguity, provided its meaning and the intent of the parties to it can be

ascertained by means of competent extrinsic testimony.` (*C. &
H.* 1383.)

*Third.* All evidence is competent to explain an ambiguous
contract which contributes to place the judicial body, called
upon to interpret and enforce it, in the same position, and con-
fer upon it the same knowledge of the subject matter which
the parties possessed at the time they made the contract.
(2 *Cowen & Hill's Notes,* 1399, *note* 957; *Wigram on Extr.
Evidence,* 59; *Fish* v. *Hubbard,* 21 *Wend.* 651; *Dygert* v. *Plitts,*
25 *Wend.* 402; 1 *Greenleaf on Ev.,* § 282 *to* 300; *Story on
Contracts,* § 267; 1 *Greenleaf on Ev.* 301, *n.* 2.)

*Fourth.* If the ambiguity, as in this case, relates to or is
found in the description of the subject matter of the contract, it is
competent for the court to receive evidence of all such extrinsic
circumstances as being known to the parties when they made
the contract enabled them to understand about what they were
contracting, and having received such evidence, if with its help
the court can ascertain the subject of the contract, it should not
be held void for uncertainty.   (1 *Greenleaf on Ev. ch.* 15.)

So that in this case, if with a knowledge of the extrinsic facts
known to the parties, the court can locate the premises in ques-
tion, the contract should be sustained.

*Fifth.* The objection to the contract in question is, that it is
void for uncertainty in the description of the premises contracted
to be sold; and this is so unless from the contract itself, to-
gether with such extrinsic circumstances as it is competent to
prove, the premises can be ascertained with reasonable cer-
tainty.

*Sixth.* In the description of the premises, as given in this
contract, three particulars are presented:

1. It is a piece of land supposed to contain about six or eight
acres.

2. The boundary commences at a stone marked " J. L."

3. " From thence easterly it runs to Henry Keefer's line."
☞ 1 *J.* 156, easterly is east. ☜

*Seventh.* Now from this description taken in connection with
the testimony given and offered, could it be ascertained with

reasonable certainty what piece of land was embraced in the contract in question?

1. The starting point, the stone marked " J. L.," is certain.

2. The line running *easterly* to Keefer's line is a due east line.

3. The size of the piece of land is given with some certainty, it being about six or eight acres. (*Brant* v. *Ogden*, 1 *Johns. Rep.* 156.)

*Eighth.* Now, looking at the evidence in the case and the map, it appears the plaintiff owned a piece of land containing fifty-four seven-tenth acres; and that the given line starting from the stone marked " J. L." and running due east to Keefer's line, cuts off a piece of the said land measuring four seven-tenth acres, and to reach the defendant's premises from the given point in Keefer's line, it is necessary to run north on the eastern boundary of the four seven-tenth acre lot. It was further offered to be proved that defendant owned land west of the four seven-tenth acre lot as far south as the stone marked " J. L.," and that the four seven-tenth acre piece would make his farm square, and that he owned no land adjoining the part of plaintiff's land which lies south of the given line. Now from these facts is not the piece of land contracted for clearly ascertained?

*Joseph S. Colt, Attorney, and*
*Rufus W. Peckham, Counsel* for defendant in error.

*First.* The alleged contract for the sale of land is void for uncertainty in the description of the land contracted about. (2 *R. S.* 135, § 8.)

1. There is nothing certain *in* the contract, and it refers to nothing *extrinsic* by which the particular land can be ascertained or located. (*Abeel* v. *Radcliff*, 13 *J. R.* 300.)

2. This is not a case where part of the description may be rejected as false, and the premises be then accurately and sufficiently described. The maxim, *falsa demonstratio non nocet*, has no application. (*Loomis* v. *Jackson*, 19 *J. R.* 449; *Wen-*

*dell* v. *The People*, 8 *Wend.* 190; *Wigram's Ex. Ev.* 105, § 133; *do.* 54, § 67.)

3. It is not a case of election as to the location of this land, as there is nothing on the face of the contract indicating an intent to give an election to the vendee. (*Cow. and Hill's Notes to Phil. Ev.* 1383.)

4. Nor has there here been any location of the premises, if location could be of any avail. (*Frier* v. *Jackson*, 8 *J. R.* 495.)

5. It is not a case where the description applies equally to more than one object or subject, where it is unambiguous in its application to each of several subjects. On the north side of this line is four seven-tenth acres; on the south fifty acres. From "six to eight acres" cannot then be made from the north side of this line. (*Wig. Ex. Ev.* 184, 169; 7 *C. & P.* 761; 1 *Cr. & Meeson*, 235; 1 *Paige*, 270.)

6. It is clear that here all the particulars are necessary to identify the thing described, (and then there is no description,) and therefore evidence of an *intent* to embrace a subject matter not answering every part of the description is inadmissible. (*Wendell* v. *The People*, 8 *Wend.* 189; *per Wadworth, Chan.*)

*Second.* Can it be pretended that " *the words* of this contract, when all the circumstances of this case are known," define or describe the four seven-tenth acres on the north side of this " easterly " line, as the land agreed to be sold? (*Wig. Ex. Ev.* 98, § 128–9; *do.* 76, § 96.)

The inquiry, after the facts are known, is confined to the " meaning of the *words used*—hence all extrinsic evidence tending to prove not what the party *has expressed*, but what he *intended to express*, is calculated to throw no light on the real matter in dispute." (*Cow. and Hill's Notes*, 1387; *Wig. Ex. Ev.* 116, § 153.)

To define that which is indefinite, " is to make a material addition to the will; once admit that the person or thing intended by the testator, need not be adequately described, and it is impossible to stop short of the conclusion that a mere mark will, in every case, supply the place of a proper description." (*Wig. Ex. Ev.* 121, § 158; *do.* 97, § 126.)

*Third.* The declaration in this case is for *damages* for not taking the deed, not for the price of the land, as it states, and as both parties understood? Hence the plaintiff below could recover only six cents, unless he proved damages. For this six cents this court will not reverse the judgment. "*De mini-mis,*" &c., applies. (*Graham on New Trials,* 307 to 310.)

DECISION.—Judgment affirmed unanimously.

Note.—In a *contract* for the conveyance of real estate, the description of the premises, to which any effect can be given, must be either perfectly certain of itself, or capable of being made so *by a reference* to something extrinsic the contract.

That the parties know the localities, or parcel contracted for, is nothing; the written instrument is alone the only competent evidence of their object and intent.

*Not reported.*