(12 App. Div. 613.)

### CLARK et al. v. HOLDRIDGE et al.

(Supreme Court, Appellate Division, Third Department. January 12, 1897.)

1. PUBLIC LANDS—STATE GRANT—PRESUMPTION OF STATE'S TITLE.
 A grant of lands by the state is prima facie evidence of its title thereto.

2. TAXATION—TAX DEED—INSUFFICIENT DESCRIPTION.
 The land sold for taxes is not sufficiently identified by the comptroller's certificate, stating the sale of "S. E., 30 acres, * * * State land tract, lot 63, 134 a.," and his record book, showing that for taxes on "lot 63, State land tract, 134 acres in the town of Hunter, the S. E. part containing 30 acres," was sold, the tax deed being lost, where lot 63 contains 589 acres, and is in two towns, and it does not appear how much of it is in the town of Hunter, since the certificate and record, taken together, do not locate either the 134 acres in lot 63, or the 30 acres in the 134 acres.

3. DAMAGES—TRESPASS UNDER COLOR OF TITLE—CUTTING TREES.
 The measure of damages for cutting and taking away trees, when done in good faith, under claim of title, is the value of the trees as standing timber, and not their value as augmented by defendant's labor in converting them into logs.

Appeal from judgment on report of referee.

Action by Mary S. Clark and others against Martin L. Holdridge and John West, for damages for the cutting of trees, and for an injunction. From a judgment in favor of plaintiffs, defendants appeal. Modified.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Edw. J. Meegan, for appellants.
James B. Olney, for respondents.

LANDON, J. Unless the tax title to the 30 acres upon which the defendants rely is good, the plaintiffs established title in themselves to the whole of lot 63, containing 589 acres, and not subdivided. It

includes the 30 acres in question, upon which the defendants cut
down the trees, and removed 400 logs cut therefrom. The plaintiffs
deduce their title by successive conveyances, beginning with a grant
from the state in 1816. The land is mountain woodland in Greene
county, and has never been inclosed. It is objected that title was
not shown to be in the state in 1816. The grant from the state, as
sovereign proprietor, is sufficient evidence of its title, in the absence
of evidence that prior to the grant the title of the state had in some
way been divested. Wendell v. People, 8 Wend. 183; People v.
Denison, 17 Wend. 312; People v. Rector, 22 N. Y. 44. No such evi-
dence was given, and thus plaintiffs showed title in themselves.

The defendants claim title under the sale by the comptroller of
the state of the 30 acres in question, for unpaid taxes, to M. Hender-
son, who assigned to Maurice E. Viele. The comptroller's deed was
never recorded, and is lost. Defendants produced the certificate of
the comptroller, dated November 28, 1859, showing that on that day,
pursuant to the statutes in relation to the assessment and collec-
tion of taxes—

"M. Henderson has purchased the following lot of land situate in the county of
Greene, S. E., thirty acres to be laid out at the expense of the purchaser, namely,
                              State Land Tract
Lot 63.                                                           134 a.
for which he has paid the sum of two 34–100 dollars."

—And further stating that the purchaser would be entitled to a
deed of the land, if not redeemed within two years. An assignment
by M. Henderson of the certificate to Maurice E. Viele was shown.
Also, an extract from "the book of tax sales of lands of nonresidents
made by the comptroller in the year 1859," which states that for the
unpaid tax of $1.04, for the year 1855, upon lot 63, State land tract,
134 acres, in the town of Hunter, Greene county, the southeast part,
containing 30 acres, was sold to M. Henderson, and conveyed Sep-
tember 15, 1863, to Maurice E. Viele. Also, deed from Viele to Peck
in 1893, and from Peck to the defendant Holdridge of all the right,
title, and interest which Viele acquired by virtue of the deed from
the comptroller to him. Holdridge obtained the deed from Peck
in June, 1893. In September of that year he caused 30 acres in the
southeast corner of the tract to be surveyed, and then he conveyed
it by metes and bounds, to the defendant West. Then the defend-
ants went upon the premises, erected a shanty, and began to fell
the timber. In December following, the plaintiffs, upon discovering
the acts of the defendants, brought this action.

If we assume, as I think we may, from the comptroller's certificate
and entry, that the comptroller gave a deed in 1863 to Maurice E.
Viele, we must assume that it was of the land sold (Laws 1855, c.
427, § 63; 3 Rev. St. [9th Ed.] p. 2151), namely, "The following lot
of land situate in the county of Greene, S. E., thirty acres, to be laid
out at the expense of the purchaser, namely, State land tract, lot 63,
134 acres." Lot 63 contained 589 acres. Where were the 134 acres
of which the southeast 30 were sold? We may assume, I think, from
the official entry in the comptroller's book of nonresident tax sales

(Van Bergen v. Bradley, 36 N. Y. 318), that the comptroller's deed gave the further particulars contained in the assessment roll, reciting that the sale was for the unpaid tax of $1.04, for the year 1855, upon 134 acres in the town of Hunter, Greene county, lot 63, State land tract, the southeast part. It appears that in 1855 lot 63 lay partly in the town of Hunter, and partly in the town of Jewett; but how much lay in one town, and how much in the other, or where the town boundary passed through the lot, is not shown. The southeast corner of lot 63, as shown by the map in evidence, is an obtuse angle of 125 degrees. If 30 acres should be laid out as near to that corner as possible, it would be done by drawing a curved line, by means of a radius from the corner, of sufficient length to include that area; and it would, of course, extend an equal distance upon the two sides which form the corner. This would be, in great part, a different parcel from that laid out and claimed by the defendants, the greater part of which lies along the southerly side of the lot. Perhaps the defendants laid it out with respect to the boundary line between the two towns, but this is not shown. The assessment roll of the town of Hunter for 1855, of nonresident lands is, in the proper columns, and under the proper captions, as follows: "State land tract, lot No. 63, 134 acres, 134 [dollars], 99 [cents]." The statute requires that the comptroller's certificate of sale "shall describe the lands purchased." Laws 1855, c. 427, § 66, subd. 3 (3 Rev. St. [9th Ed.] p. 2152). "When the line between two towns divides a lot * * * if unoccupied, each part shall be assessed in the town in which the same shall lie." 1 Rev. St. p. 389, § 4. Practically unchanged in this respect, 2 Rev. St. (9th Ed.) p. 1681. And, where a part only of the whole tract is liable to taxation, "that part or the part not liable must be particularly described." 1 Rev. St. p. 391, § 13, subd. 3 (2 Rev. St. [9th Ed.] p. 1684). The assessment did not particularly describe the part of lot 63 liable to be taxed in the town of Hunter. Zink v. McManus, 121 N. Y. 259, 24 N. E. 467, and cases cited. The description in the comptroller's certificate is still more vague, for it is an imperfectly described part of an imperfectly described part of lot 63. The additional particulars in the deed from the comptroller do not supply the particulars necessary to locate the 30 acres. The defendants therefore acquired no title by virtue of the deed. Oakley v. Healy, 38 Hun, 244. To hold that a title illegal in its inception becomes valid by the neglect for 30 years to record or assert it seems opposed to sound principles. But without inquiring what effect as evidence of the comptroller's right to sell the 30 acres the unrecorded deed of the comptroller and his certificate of sale should receive, when, for more than 30 years after they were given, no rights were claimed under them, we must hold that on their face they do not purport to convey the 30 acres here in question. The defendants, having no title or right to possession, were therefore trespassers, as against the plaintiffs, who had the valid title. Randall v. Sanders, 87 N. Y. 578. Code, § 1667, gives to the owner of land an action against any person who cuts down or carries off any tree or timber on such land without the owner's leave.

The referee allowed the plaintiffs 45 cents each for 400 logs which the defendants carried away, being as he found their value as they lay upon the premises. He found that, apart from the value of the logs, the damage to the premises was nominal. He also found that the defendants had probable cause to believe that the land belonged to them. The defendants claim that this recovery embraces the additional value which the defendants, by cutting and other labor, imparted to the logs,—about 10 cents each log,—and that the true measure of damages, where the defendants have acted in good faith, is the value of the trees standing on the land, or the difference in the value of the land before and after the cutting, as the one or the other measure, under the circumstances, best affords the plaintiff full compensation. As, apart from the value of the trees cut, no damage was done to the freehold, and as the defendants acted in good faith, we think the true measure of damages is the value of the trees as standing trees, and not their value as logs. Dwight v. Railroad Co., 132 N. Y. 199, 30 N. E. 398. The rule is thus stated in Woodenware Co. v. U. S., 106 U. S. 434, 1 Sup. Ct. 398:

"Where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern; or, if the conversion sued for was after value had been added to it by the work of the defendant, he should be credited with this addition."

Forty dollars should be deducted from the recovery.

As the defendants removed the logs for which the recovery against them is had, the judgment enjoining them from further trespassing upon the premises, though perhaps not necessary, under the evidence, can do them no harm.

Judgment modified by deducting $40 from the recovery, as of the date of its entry, and as so modified affirmed, with costs. All concur.