■ ROBERT WHITAKER et al., Appellants, v JOHN J. McGEE et al., Respondents, et al., Defendant. — Weiss, J. Appeal (1) from an order of the Supreme Court at Special Term (Ford, J.), entered October 9, 1984 in Clinton County, which granted the cross motion of defendants John J. McGee and Wilmington Dryer Company for summary judgment dismissing the complaint, and (2) from the judgment entered thereon.

In June 1981, defendant Wilmington Dryer Company (hereinafter Wilmington), a Pennsylvania corporation,[*] contracted with

---

[*] Also named as defendants are John J. McGee, president of Wilmington, and Thomas T. Taylor, alleged to be an agent of Wilmington, both identified herein by surname.

defendant Green Mountain Forest Products, Inc. (hereinafter Green Mountain) to harvest timber on Wilmington's land in Clinton County. Pursuant to the contract, Green Mountain was to harvest approximately 1,400 of the 1,756 acres owned by Wilmington and was to be paid for both wood chips and logs. Thomas Taylor, who did business under the trade name of American Woodlands, supervised the project and directed Green Mountain to the areas to be harvested. During this process, it is undisputed that timber was cut and removed from 14.75 acres of plaintiffs' property which adjoined the Wilmington property. Plaintiffs commenced the instant action alleging that defendants willfully cut timber on their land and demanded treble damages pursuant to the provisions of RPAPL 861 (2). Subsequently, a default judgment was entered against Green Mountain (*see, Whitaker v McGee,* 95 AD2d 938). A referee determined that 1,163.77 tons of timber, with a standing value of $1 per ton, had been removed from plaintiffs' property, but awarded plaintiffs damages in the amount of $19,551.37, with interest, based on the market value of the timber in its improved form of wood chips, i.e., $16.08 per ton (*cf. Clark v Holdridge,* 12 App Div 613). Thereafter, plaintiffs' motion for treble damages pursuant to RPAPL 861 (2) as against Green Mountain was settled for $24,537.

Following the settlement, plaintiffs moved for summary judgment against Wilmington, John McGee and Taylor (hereinafter defendants), seeking treble damages, i.e., $58,654.11, with interest, less the $24,537 settlement award. Wilmington and McGee cross-moved for summary judgment dismissing the complaint. Special Term granted the cross motion and dismissed the complaint against defendants, finding that the trespass was unintentional and that damages should be based on the $1 per ton value of the standing trees. Although Special Term further determined that plaintiffs were entitled to treble damages since the trespass was not "casual and involuntary" within the context of RPAPL 861 (2) (a), the complaint was dismissed on the basis that plaintiffs had been fully compensated under the earlier settlement.

On this appeal, plaintiffs contend that Special Term erred in finding that the trespass was inadvertent and in assessing damages on the basis of standing value, rather than the market value of the timber removed. We agree. Generally, the owner of property wrongfully taken by a trespasser is entitled to the enhanced value of the property as damages (*Silsbury & Calkins v McCoon,* 3 NY 379, 381-385, 390; *see also,* 59 NY Jur, Timber

and Lumber, § 7, at 43 [1968]). In *Clark v Holdridge* (12 App Div 613), this court long ago determined that in an instance where trees are cut inadvertently or by mistake, i.e., in good faith, the appropriate measure of damages is "the value of the trees as standing trees" (*supra*, p 616; *see, Dyke v National Tr. Co.*, 22 App Div 360). As a corollary to this rule, a property owner is entitled to the enhanced value of property taken in the event of an intentional or reckless trespass, i.e., market value (*see, Dyke v National Tr. Co., supra*, p 361). Plaintiffs maintain that inasmuch as defendants admittedly failed to identify the boundaries of the Wilmington property prior to commencement of the harvesting operation, the trespass was unduly reckless, thereby entitling them to the market value of the timber removed. Plaintiffs emphasize that defendants failed to meet their burden of establishing that the trespass was in good faith (*see, Trustees of Dartmouth Coll. v International Paper Co.*, 132 F 92, 97). Defendants counter that since plaintiffs failed to demonstrate an intentional trespass, damages were properly assessed at standing value.

At the outset, we note that RPAPL 861 (2) only requires a plaintiff to plead treble damages, not to affirmatively demonstrate that the trespass was intentional. Contrary to Special Term's analysis, defendants, not plaintiffs, were required to establish that the trespass was the result of good-faith negligence (RPAPL 861 [2] [a]; *see, Braman v Rochester Gas & Elec. Corp.*, 54 AD2d 174, 176; *Tubb v Rolling Ridge*, 28 Misc 2d 532, 537). Although it is readily apparent that the trespass was not intentional, the record fails to indicate whether the trespass resulted from negligence or recklessness (*see*, Restatement [Second] of Torts § 500, Comment *g* [1965]). Wilmington states that it supplied Taylor with two small-scale maps of the area prior to commencement of the operation and instructed him to obtain a more detailed map of the County. If these maps were inaccurate or Taylor simply misread them, the trespass could be deemed the consequence of negligence. On the other hand, if the maps were known to be inadequate or Taylor consciously disregarded them, the trespass would smack of recklessness. The record simply does not confirm the viability or use of these maps. Significantly, after the trespass occurred, McGee purportedly provided Taylor with a topographical map illustrating the boundaries of Wilmington's property from which Taylor immediately realized the intrusion on plaintiffs' property. For purposes of RPAPL 861 (2) (a), a trespass may be characterized as "involuntary" where the trespasser acted in a good-faith reasonable belief in his right to harvest the trees (*see, Braman v Rochester Gas & Elec. Corp., supra*, p 176). Whether defendants

so acted is necessarily a matter peculiarly within their own knowledge, and yet they failed to come forward with a viable explanation (*see, P.S. Auctions v Exchange Mut. Ins. Co.,* 105 AD2d 473, 475). Special Term acknowledged as much by observing that there was no factual basis for a "casual or involuntary" trespass within the meaning of RPAPL 861, but then failed to construe the appropriate consequences. These circumstances prevailing, plaintiffs were entitled to partial summary judgment on the issue of liability.

Nor can we agree that Wilmington and McGee can avoid liability by asserting that Taylor, as an independent contractor, is responsible for having directed Green Mountain to cut timber on plaintiffs' property. We recognize that a party is not liable for a trespass committed by an independent contractor unless that party directed the trespass or such a trespass was necessary to complete the contract (*Semon v Chasol Constr. Corp.,* 7 AD2d 1009; *see, Horn v State of New York,* 31 AD2d 364, 366). A review of the record, however, belies their contention that Taylor was an independent contractor and not an agent. Taylor's responsibilities as forester included supervision and direction over which areas to harvest and when to discontinue harvesting during the spring mud season. Although the degree of control McGee exercised over Taylor in performing these functions is not clearly set forth, other aspects of their association confirm Taylor's capacity as agent. Taylor was employed continuously by McGee from June 1981 through December 1981, at a biweekly "salary" of $450, until he was "laid off" in January 1982. The record documents that an invoice procedure for payment was devised by Taylor and McGee to avoid the appearance that Taylor was an employee for tax purposes. Since it is clear that Taylor was an agent for McGee, both McGee and Wilmington may be vicariously liable for his conduct.

In sum, plaintiffs should be granted partial summary judgment on the issue of liability, and the matter should be remitted for a trial on the market value of the timber removed from plaintiffs' property.

Order and judgment reversed, on the law, without costs, plaintiffs' motion is granted to the extent that they are awarded partial summary judgment on the issue of liability, and matter remitted to Trial Term for further proceedings not inconsistent herewith. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.