■ ROBERT WHITAKER et al., Respondents, v JOHN J. McGEE et al., Appellants, et al., Defendants.—Weiss, J. Appeal from a judgment of the Supreme Court (Ryan, Jr., J.), entered February 20, 1990 in Clinton County, upon a decision of the court in favor of plaintiffs.

The facts may be found in our previous decision when this case was before us (111 AD2d 459). There, we decided that the harvest of standing trees on plaintiffs' property by defendants was, in the absence of proof, neither "casual nor involuntary" within the meaning of RPAPL 861, and awarded plaintiffs partial summary judgment on the issue of liability and remitted the case for a trial to determine the market value of the

trees cut and award judgment for damages.* Because defendants failed to sustain their burden of affirmatively proving that their taking was the result of good-faith negligence (RPAPL 861 [2] [a]; *see, Bramam v Rochester Gas & Elec. Corp.,* 54 AD2d 174, 176), our granting of partial summary judgment on the issue of liability necessarily included an award of treble damages.

On October 19, 1987 the parties entered into a written stipulation of facts which provided, *inter alia,* that 885 tons of wood chips were taken from plaintiffs' land and sold for $14,868. Supreme Court found plaintiffs' damages to be $14,868 which, when trebled, amounted to $44,604. Credit was given for a $24,537 settlement by another party resulting in a judgment for $20,067, increased to $36,388.65 by interest, costs and disbursements.

Only defendants John J. McGee and Wilmington Dryer Company (hereinafter collectively referred to as defendants) have appealed and they have limited their argument solely to the question of whether the Supreme Court erred "in the manner in which it assessed market value, damages and treble damages". Defendants essentially seek to reargue that which this court has already decided and which remains the law of this case. We have already held that they failed to sustain the affirmative burden of proving the cutting was casual or involuntary within the meaning of RPAPL 861 and therefore was unduly reckless. This finding entitles plaintiffs to the enhanced value of the trees, in this instance the market value of the wood chips into which they had been converted. Defendants' contention that the damages should be limited to $1 per ton or $885 (the standing value of the trees) trebled is without merit. We specifically determined in the earlier appeal (111 AD2d 459, *supra)* that the value was to be the enhanced market value *(supra,* at 460, 462) and that plaintiffs were entitled to treble damages *(supra,* at 461-462). We decline to depart from our previous decision.

Judgment affirmed, with costs. Mahoney, P. J., Weiss, Mercure, JJ., concur.

Kane and Casey, JJ., dissent in a memorandum by Kane, J. Kane, J. (dissenting). Initially, it is noted that a default

---

* RPAPL 861 (2) provides that a landowner may recover treble damages against one who cuts or disposes of tree(s) on his land without permission, unless a defendant affirmatively proves that the taking was casual and involuntary or that the defendant had probable cause to believe the land was his own.

judgment was entered against Green Mountain Forest Products, Inc., a named defendant in this action, who eventually settled with plaintiffs. With this in mind, we further note that the stipulation entered into between plaintiffs and the remaining defendants demonstrates that Green Mountain was directed to cut plaintiffs' timber by defendant Thomas Taylor and that defendants John J. McGee and Wilmington Dryer Company (hereinafter collectively referred to as Wilmington) were liable for the acts of Taylor. Thus, by the very facts as stipulated to by plaintiffs, Wilmington was the sole wrongdoer causing plaintiffs' damages. Had it been found otherwise, we would be in favor of remittal to calculate that percentage of liability attributable to each tort-feasor to determine the effect of Green Mountain's settlement with plaintiffs on the remaining defendants' liability thereto *(see,* General Obligations Law art 15).

As to damages recoverable from those defendants remaining, the majority correctly states that, pursuant to this court's previous holding (111 AD2d 459), plaintiffs are entitled to the enhanced market value of the trees harvested by defendants *(see, Disbrow v Westchester Hardwood Co.,* 164 NY 415, 420). In our view, however, the enhanced market value is limited in this instance to the "enhanced value arising from the trespasser's labor" (75 NY Jur 2d, Logs and Timber, § 30, at 720; *see, Silsbury v McCoon,* 3 NY 379, 381-383). The record demonstrates that the remaining defendants' labor was limited to directing Green Mountain to the areas to be harvested on defendants' land, during which time defendants "recklessly" directed the harvesting of 14.75 acres of timber situate on plaintiffs' adjoining property. In our view, "[the timber's] 'removal from [plaintiffs' property] constituted the conversion, and [its] value at that place at the time of conversion is the measure of damages' " *(Rock v Belmar Contr. Co.,* 141 Misc 242, 244, quoting *Johnson v Kathan,* 88 Hun 456). Defendants received $1 per ton of Green Mountain's wood chips for the wrongfully cut trees, for a total of $885. That figure accurately reflects the labor invested by defendants into the wrongfully harvested trees and, therefore, the enhanced market value of the trees at the time of their harvesting. Accordingly, we would amend Supreme Court's judgment to reflect the finding that the market value of the timber removed was $885.