■ PAUL VANDERWERKEN et al., Respondents-Appellants, v DUNCAN BELLINGER et al., Appellants-Respondents, et al., Defendants. [900 NYS2d 170]—

Kavanagh, J. Cross appeals from a judgment of the Supreme Court (Devine, J.), entered March 17, 2009 in Schoharie County, upon a decision of the court in favor of plaintiffs.

In May 2005, plaintiffs and defendant Duncan Bellinger entered into an installment contract whereby plaintiffs would purchase 180 acres of real property owned by Bellinger in the Village of Esperance, Schoharie County for $356,182.40. Pursuant to the contract, plaintiffs were required to make five annual installment payments of $71,236.48, plus interest, and while they took immediate possession upon the signing of the contract, they would only obtain title to the property when the last payment was made. The contract gave Bellinger until March 1, 2006 to harvest 276 premarked trees on the premises and provided for a one-year extension if "ground conditions don't permit completion of logging by March 1, 2006."

When March 1, 2006 passed—and the trees had not been

harvested—plaintiffs informed Bellinger that the option period in the contract had expired and Bellinger no longer had a legal right to enter the property to perform the harvest. These communications notwithstanding, Bellinger retained defendant Beaver Clune Lumber Corporation (hereinafter Clune) and, in August 2006, Clune harvested the 276 premarked trees and, according to plaintiffs, also took or seriously damaged an additional 287 trees from the property. In addition, plaintiffs claim that during the harvest, a gravel road that they had constructed on the property sustained significant damage.

Plaintiffs commenced this action against Bellinger and Clune (hereinafter collectively referred to as defendants) for breach of contract and trespass and sought treble damages for the value of the trees taken, as well as an award for the destruction of roads located on the property and attorney fees. After a nonjury trial, plaintiffs were awarded a judgment against defendants, which included treble damages for the trees taken and destroyed during the harvest—each tree, per plaintiffs' request, was accorded a base value of $250—$20,000 for damage to the gravel road and $640 to repair the logging roads on the property, plus interest.* Defendants now appeal, making a number of claims including that RPAPL 861 does not apply to a breach of contract action, the harvesting of the trees did not constitute a material breach of the parties' contract, if there was a breach, treble damages should not have been imposed, and plaintiffs' failure to procure insurance on the property entitled Bellinger to rescind the contract. Plaintiffs cross-appeal, claiming that Supreme Court, without explanation, denied their claim for counsel fees.

Initially, RPAPL 861 (1), in relevant part, applies to any person who "without the consent of the owner thereof, cuts, removes, injures or destroys, or causes to be cut, removed, injured or destroyed, any underwood, tree or timber on the land of another . . . or damages the land in the course thereof" (see Miller v Moore, 68 AD3d 1325, 1327-1328 [2009]; Green Harbour Homeowners' Assn., Inc. v Ermiger, 67 AD3d 1116, 1117 [2009]; Spano v Kline, 50 AD3d 1499, 1500 [2008], lvs denied 11 NY3d 702, 704 [2008]; Krieg v Peters, 46 AD3d 1190, 1191-1192 [2007]; Zablow v DiSavino, 22 AD3d 748, 749 [2005]). Bellinger argues that since he was the titled owner of the property when he entered the land and conducted the harvest, he did not trespass onto the property and RPAPL 861 does not apply. We disagree. Plaintiffs, upon execution of this contract, not only took posses-

---

* This amount was reduced by what plaintiffs still owed on the purchase price pursuant to the parties' contract.

sion, but acquired equitable title to the property. While the deed to the property remained in Bellinger's name, he in effect held "legal title in trust . . . and maintain[ed] an equitable lien" on the property as security for the contract's purchase price (*Edwards v Van Skiver*, 256 AD2d 957, 958 [1998]; *see Elterman v Hyman*, 192 NY 113, 119 [1908]; *Conneely v Herzog*, 33 AD3d 1065, 1065-1066 [2006]; *Romel v Reale*, 155 AD2d 747, 747-748 [1989]; *see also Bean v Walker*, 95 AD2d 70, 72 [1983]). Moreover, the parties' contract recognized Bellinger's limited interest in the property and specifically restricted his right to enter upon the property to harvest the trees to the period defined by the option, and that right ceased to exist once the option period expired (*compare Green v Curbeau*, 53 AD3d 867, 869 [2008]).

Bellinger also argues that given the circumstances that existed and, in particular, his good faith belief that he had the right to enter upon the property and conduct the harvest, treble damages should not have been imposed pursuant to RPAPL 861 (1). To avoid the imposition of treble damages, defendants were required to prove by clear and convincing evidence that when they "committed the violation, [they] had cause to believe the land was [Bellinger's], or that [Bellinger] had an easement or right of way across such land which permitted such action, or [Bellinger] had a legal right to harvest such land" (RPAPL 861 [2]; *see Krieg v Peters*, 46 AD3d at 1191; *Cunningham v Brischke*, 167 AD2d 604, 605-606 [1990]; *Whitaker v McGee*, 111 AD2d 459, 460-461 [1985]). Here, Bellinger was clearly on notice that his right to harvest the trees was limited to the option period and that the option expired on March 1, 2006. Moreover, he knew that, pursuant to the contract, this right could only be extended if it was determined by a logger prior to that date that the ground conditions did not allow for harvesting on the property. While Bellinger testified that he had plans to log the property as early as December 2005, the entity he retained to perform the logging operation went out of business and Bellinger acknowledged not contacting any other logger regarding the harvest until after the option had, in fact, expired. Evidence presented by defendants that the condition of the property did not allow for logging prior to the expiration of the option period is not persuasive since the expert giving this opinion did not visit the property during the relevant time period. Meanwhile, plaintiffs repeatedly notified Bellinger in writing that his right to harvest timber on the property had expired and that he no longer had a legal right to enter the property for that purpose. Thus, we find no reason to disturb Supreme Court's conclusion that RPAPL 861 (1) applied to these facts.

However, in their request for damages, plaintiffs did not seek

recovery of the stumpage value of the trees taken and destroyed during the harvest, but elected to seek $250 per tree as provided by the statute (see RPAPL 861 [1]). Damages pursuant to RPAPL may be awarded "equal to treble the stumpage value (as defined) of the trees or timber, or $250 per tree, or both such treble value and amount per tree, and for any permanent and substantial damage to land or improvements caused by such violation" (Winter and Loeb, Practice Commentaries, McKinney's Cons Laws of NY, Book 49½, RPAPL 861, at 439; see generally Follender v Maxim, 44 AD3d 1227, 1228 [2007]). Plaintiffs elected to seek $250 per tree and failed to present any evidence as to the stumpage value of all of the trees taken and destroyed during the harvest. As a result, they are not entitled to treble damages under this statute and the award as rendered must be reduced to a total based upon a value of $250 per tree.

We also reject Bellinger's claim that he had the right to rescind the contract based on plaintiffs' failure to procure insurance on the property. While the contract did require plaintiffs to carry $1 million in casualty and liability insurance on the property, no structures were located on the property and, as a result, an insurable interest did not exist that could be covered by casualty insurance. In addition, plaintiffs did have in place a liability policy that covered the property and, as such, complied with that term of the parties' contract.

Finally, the record is unclear as to why Supreme Court denied plaintiffs' request for counsel fees. The contract, as well as RPAPL 861, provides that such fees may be awarded in the event of a breach. As a result, we must remit this matter for further consideration as to plaintiffs' request for counsel fees.

Mercure, J.P., Rose, Lahtinen and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as awarded damages to plaintiffs and denied plaintiffs' request for counsel fees; award plaintiffs damages in the amount of $140,750 and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.