OPINION OF THE COURT
Paul I. Marx, J.
It is ordered that plaintiff’s motion[1] is granted in part for the reasons that follow.
Background
Plaintiff Fair Chase Holdings II, LLC commenced this real property damage action under Real Property Actions and Proceedings Law § 861 against the County of Dutchess, arising from the removal of 15 trees and brush on plaintiff’s property located at 223 Smithfield Valley Road, Amenia, New York 12501. Plaintiff alleges that in January 2012, defendant’s employees or agents entered its property and destroyed, cut and/or removed 15 trees and brush without its knowledge or permission. Plaintiff seeks $250 per tree/brush and $33,529.56 “to restore the property to the condition it was in before the cutting.” (Affirmation of Allan B. Rappleyea, Esq. ¶ 13.) Plaintiff asks that these damages be trebled. Plaintiff also seeks an award of costs, including attorneys’ fees.
*374 Plaintiffs 70-acre property is located along County Road 83 in Amenia, New York. A small strip of land lies between plaintiffs property and the County Road 83 roadbed, which is owned by the County. It is unclear who owns that small strip of land.[2]
On January 21, 2012, defendant’s employees noticed brush hanging over the roadbed of County Road 83 adjacent to plaintiff’s property. Defendant’s employees undertook to correct the situation by cutting down trees and brush from the land abutting County Road 83. They cut down 15 trees and a one foot clump of brush from the abutting land, without prior notice to plaintiff, in order to clear the roadway.
Prior to the close of discovery, plaintiff moved for summary judgment seeking treble damages for the County’s alleged trespass and removal of trees and brush from its land. Defendant cross-moved for summary judgment dismissing the action on the ground that RPAPL 861 applies only to commercial forestry operations.
By decision and order dated October 7, 2013, the court (Hon. Peter M. Forman, A.J.S.C.) denied plaintiff’s motion. The court held that plaintiff failed to establish: (1) that it owned the land located at 223 Smithfield Valley Road; (2) that defendant cut down the trees that were allegedly located at that address; and (3) that the trees were actually located on plaintiff’s property. Judge Forman also denied defendant’s cross motion, finding that RPAPL 861 has been applied routinely to disputes that did not involve the forestry industry.
Plaintiff again moves for summary judgment on the ground that it has established prima facie entitlement to the damages sought. In support of its motion, plaintiff submits affidavits of Craig Callen, a member of Fair Chase, Dennis Gendron, an arborist, and Kevin Cunningham, a land surveyor. Plaintiff submits a deed for 223 Smithfield Valley Road, the deposition transcript of County of Dutchess employee Kevin Culich, an employee statement of incident, and photographs of the damaged property. Plaintiff also provides a rudimentary survey map showing the location of stumps on its property. Plaintiff’s survey shows that a six inch apple clump; a four inch apple or elm; a three inch unspecified tree; a group of five, one to three *375 inch apple; a six inch apple; a five inch apple; and a one foot clump of brush were located on its property.[3] ****8 The survey also shows that a 12 inch apple; a two inch ash or elm; a four inch twin apple; a five inch apple; and a five inch twin apple were located partially on plaintiff’s land and partially on the strip of land between County Road 83 and plaintiff’s property.
Defendant does not dispute liability, stating that it “withdraws its good faith defense.” Instead, defendant disputes the damages sought by plaintiff. Defendant argues that plaintiff is not entitled to: (1) $250 for the five trees removed that were owned as tenants-in-common with the County; (2) any damages associated with brush removed; (3) the cost of replacement trees or replanting; (4) treble damages; or (5) costs and attorneys’ fees. Accordingly, the court grants summary judgment as to liability and will address only the issue of damages.
Discussion
“This solitary Tree! a living thing
“Produced too slowly ever to decay;
“Of form and aspect too magnificent
“To be destroyed.” (William Wordsworth, Yew-Trees.)
Wordsworth’s fondness for trees has been captured by the New York State Legislature and codified into law under RPAPL 861 (1). That section provides:
“If any person, without the consent of the owner thereof, cuts, removes, injures or destroys, or causes to be cut, removed, injured or destroyed, any underwood, tree or timber on the land of another ... an action may be maintained against such person for treble the stumpage value of the tree or timber or [$250] per tree, or both and for any permanent and substantial damage caused to the land or the improvements thereon as a result of such violation.”
Plaintiff seeks to benefit from the legislature’s veneration of trees by recouping the full measure of damages provided by RPAPL 861 (1). Plaintiff alleges that defendant is liable for *376 treble the amount of damages, consisting of $250 per tree/ brush and the costs to restore the property in the sum of $33,529.56, plus reasonable costs for maintaining the action.
I. Recovery for Trees or Timber
A. Stumpage Value
“Damages pursuant to RPAPL may be awarded ‘equal to treble the stumpage value (as defined) of the trees or timber, or $250 per tree, or both such treble value and amount per tree, and for any permanent and substantial damage to land or improvements caused by such violation.’ ” (Vanderwerken v Bellinger, 72 AD3d 1473, 1476 [3d Dept 2010], quoting Rudolph de Winter & Larry M. Loeb, Practice Commentaries, McKinney’s Cons Laws of NY, Book 49½, RPAPL 861 at 439, citing Follender v Maxim, 44 AD3d 1227 [3d Dept 2007].) “The term stumpage value is defined as ‘the current fair market value of a tree as it stands prior to the time of sale, cutting, or removal.’ ” (Western N.Y. Land Conservancy, Inc. v Cullen, 66 AD3d 1461, 1464 [4th Dept 2009], quoting RPAPL 861 [3].)
In its complaint, plaintiff seeks $250,000 in total damages under RPAPL 861. Plaintiff does not specifically request stump-age value for the removed trees in either its complaint or motion. Plaintiff states: “First, there were 16 trees/brush cut in this case and there was no permission for such cutting. Thus, as [sic] $250 per, this is $4,000 . . . Second, the costs to restore the property to the condition it was in before the cutting is $33,529.56.” (Affirmation of Allan B. Rappleyea, Esq. ¶¶ 12-13.) Defendant contends that plaintiff is not seeking stumpage value, has not provided any evidence of stumpage value and has specifically demanded only an award of $250 per tree. Plaintiff does not counter defendant’s assertion.
Where a plaintiff fails to seek recovery for stumpage value in its request for damages, a plaintiff has waived claim to stumpage value and is entitled only to $250 per tree. (Vanderwerken.) Here, plaintiff has waived any claim to stumpage value of the trees removed by opting for recovery of $250 per tree.
B. Number of Trees for Which Plaintiff May Recover
Plaintiff seeks to recover $250 for each of the 15 trees removed from its land abutting County Road 83. Plaintiff also seeks to recover $250 for a one foot clump of brush. Defendant disputes plaintiff’s recovery as to five of the trees, because they are on the property line, and the clump of brush, because it is *377 not a tree. Plaintiff is awarded $250 for each of the 10 trees for which defendant does not dispute recovery. Thus, plaintiff shall have judgment for $2,500 for the undisputed trees.
Defendant contends that plaintiff may only receive $125 for each of the five property line trees, because they are held as tenants-in-common with defendant. Defendant argues that plaintiff may not recover for brush.
1, Trees Held as Tenants-in-Common
Defendant argues that five of the trees removed were on or abutted the property line and were therefore only partially owned by plaintiff. Defendant contends that plaintiff may only recover half of the damages for these trees as they were owned as tenants-in-common. Plaintiff concedes that three trees are divided by the property line, but argues that it is entitled to more than half of the value of the trees because “only a small fraction of the tree is intersected by the property line.” (Affirmation of Allan B. Rappleyea, Esq. in reply ¶ 29.) Plaintiff claims that it is entitled to 75% of the damages for those trees. Plaintiff does not address the ownership of the other two trees disputed by defendant.
“[W]here the trunk of [a] tree . . . has grown over onto both [parties’] properties, the tree becomes property held as tenants-in-common.” (OShea v Shanzer, 40 Misc 3d 1224[A], 2013 NY Slip Op 51291[U], *1 [Suffolk Dist Ct 2013], citing Hileman-Rizzo v Krysty, 10 Misc 3d 135[A], 2005 NY Slip Op 52118[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2005]; see Hollenbeck v Genung, 198 AD2d 677 [3d Dept 1993].) As such, a party may recover 50% of the value of the tree. (See Hollenbeck [affirming the Supreme Court’s determination that defendants were liable to plaintiff for one half of the value of property line trees].)
Here, the rudimentary survey provided by plaintiff establishes that four of the trees removed (those identified as a four inch twin apple, a five inch apple, a 12 inch apple, and a two inch ash or elm) are dissected by the property line. The survey also establishes that the trunk of one of the trees removed (identified as a five inch twin apple) comes into contact with the property line. Plaintiff’s contention that damages for these trees should only be reduced by the actual percentage of the tree that is on defendant’s property is without merit.
Accordingly, the court finds that any damages awarded for the destruction and removal of the five trees that are dis *378 sected by or come into contact with the property line will be reduced by 50%. Plaintiff is awarded and shall have judgment for $125 for each of the five trees, or a total amount of $625.
2. Clump of Brush
Plaintiff argues that defendant is liable for damages attendant to the destruction and removal of a one foot clump of brush. Specifically, plaintiff argues that defendant must pay $250 and the cost of a four to five foot viburnum bush to replace the brush. Defendant contends that the plain reading of the statute limits recovery to trees. In response, plaintiff asserts that the statute provides recovery for underwood, tree or timber. Plaintiff states that a one foot clump of brush falls within the definition of underwood. Plaintiff provides a printout from AudioEnglish.org defining underwood as “[t]he brush (small trees and bushes and ferns etc.) growing beneath taller trees in a wood or forest.” (Http://www.audioenglish.org/search/ underwood.htm?whereto=http%3A//www.audioenglish.org/.)
Merriam-Webster Online Dictionary defines underwood as “undergrowth, underbrush.” (Http://unabridged.merriamwebster.com/unabridged/underwood.) The dictionary defines undergrowth as “low growth on the floor of a forest including seedlings and saplings, shrubs, and herbs” (http://www. merriam-webster.com/dictionary/undergrowth) and underbrush as “shrubs, bushes, or small trees growing beneath large trees in a wood or forest.” (Http://www.merriam-webster.com/dictionary/underbrush.) Merriam-Webster further defines brush as “scrub vegetation.” (Http://unabridged.merriam-webster.com/ unabridged/brush.) Accordingly, the court finds that the one foot clump of brush is underwood.
RPAPL 861 (1) provides a cause of action to a property owner whose “underwood, tree or timber” has been destroyed. However, damages may only be recovered for the stumpage value of a tree or timber, $250 per tree, or both, and/or any permanent and substantial damage done to the land. {See RPAPL 861 [1].) Thus, a plaintiff whose underwood has been destroyed can maintain a cause of action under RPAPL 861, but may not recover $250 because underwood is not a tree. Recovery for underwood comes within the language of section 861 that provides recovery for any permanent and substantial damage caused to the land.
II. Permanent and Substantial Damage to Land
Plaintiff seeks to recover $33,529.56 for the costs of restoring the property to the condition it was in before the cutting. *379 Plaintiff asserts that this amount includes the retail price of replacement trees/shrubs, delivery, soil amendment, planting and mulching, because the lands cannot be restored to their condition immediately before the destruction occurred without replacing and installing comparable plants.
Defendant argues that plaintiff may not recover that amount because it has not shown that the land, meaning the soil, or any improvements upon it were permanently and substantially damaged. Moreover, it contends such award would allow for double recovery. Plaintiff counters that it is entitled to damages sufficient to restore the property to its original condition and defendant does not provide any of its own estimates for such remediation.
RPAPL 861 (1) provides recovery
“for any permanent and substantial damage caused to the land or the improvements thereon as a result of such violation. Such reparations shall be of such kind, nature and extent as will reasonably restore the lands affected by the violation to their condition immediately before the violation and may be made by physical restoration of such lands and/or by the assessment of monetary payment to make such restoration.”
A. Cost for Replacement Trees and Replanting
Plaintiff seeks to recover the retail price of replacement trees, delivery, soil amendment, planting and mulching. Defendant argues that to award those costs when plaintiff could have sought stumpage value would allow for double recovery. Plaintiff reiterates that its land cannot be restored to its original condition without replacing and replanting the trees.
The Appellate Division has already spoken on these issues in St. George’s Operating & Improvement Co., Inc. v Wilson (81 AD3d 632 [2d Dept 2011]), which this court holds to be controlling. In St. George’s, plaintiff alleged that defendant had entered upon its land and removed trees. (Id. at 632.) The lower court granted plaintiff’s motion for summary judgment on liability and held an inquest on damages. (Id.) At the inquest, plaintiff stated on the record that it was only seeking stumpage value and would not seek any restoration costs. (Brief for defendant-appellant in St. George’s, available at 2010 WL 9543848, *6.) Plaintiff’s expert testified as to his calculations of the stumpage value of the trees removed. (Id. at *15-17.) Included in his calculations were the replacement cost of *380 the trees and the cost to procure, transport, install, and guarantee those trees. {Id. at *17.) The lower court awarded stumpage value based on the expert’s calculations. {St. George’s at 632.)
On appeal, defendant argued that plaintiff did not meet its burden in proving damages because its expert’s calculations were defective as they improperly included replacement value, installation cost, and current costs. (Brief for defendant-appellant in St. George’s at *17-18.) The Second Department affirmed the lower court’s award of stumpage value damages stating:
“The damages award was supported by an expert appraisal that set forth the objective facts underlying the valuation of the removed trees and that employed methods of calculation consistent with the statute (see RPAPL 861 [2], [3]; see generally Western N.Y. Land Conservancy, Inc. v Cullen, 66 AD3d 1461, 1462-1464 [2009]).” (St. George’s at 632.)
Thus, the Second Department found it proper to consider the costs for procuring, transporting, and planting replacement trees within an award of stumpage value. As the plaintiff in St. George’s had waived any claim for restoration costs, it can be inferred that restoration costs should not include costs for procuring, transporting, and planting replacement trees.
The court determines recovery of the retail price of replacement trees/shrubs, delivery, soil amendment, planting and mulching are part of stumpage value and are not included in restoration costs. Plaintiff may not recover those costs, because it did not seek stumpage value. Accordingly, plaintiff’s request for such costs is denied.
B. Cost of One-Foot-Wide Clump of Brush
Plaintiff seeks the cost of a four to five foot viburnum bush to restore its land to its original condition before a one foot clump of brush was removed. The statute does not provide a definition for “permanent and substantial damage caused to the land or the improvements thereon,” however, the legislative history provides some guidance. (RPAPL 861 [1].)
In a letter to Richard Platkin, counsel to the Governor,[4] the Attorney General’s office provides a comprehensive definition:
“It is our understanding that the term ‘permanent’ refers to degradations that will not be self replen *381 ished. For example, harm to land created by the use of skidders or the dragging of logs would be considered permanent because affirmative repairs would be needed to restore the land to its original condition, as mere passage of time would not suffice to mend the damage. The destruction of bushes and small saplings would also be considered permanent because, once destroyed, these bushes and saplings could not renew themselves.” (Sept. 26, 2003 Mem from Kathy Bennett, Chief of Legis Bur of Off of Attorney Gen, to Richard Platkin, counsel to Governor, Bill Jacket, L 2003, ch 602 at 17 [emphasis added].)
Here, plaintiff has failed to establish that the one foot clump of brush was of a kind that could not renew itself. Plaintiff does not provide any information about the species of brush. Therefore, plaintiff has not shown that it is entitled to the cost of a viburnum bush. Moreover, defendant submits pictures showing that brush now grows rampantly in the area where it removed the one foot clump of brush. (Defendant’s exhibit C.)
Accordingly, the court determines that plaintiff may not recover for any damages for the removal of the one foot clump of brush.
C. Restoration Damages
Defendant states that plaintiff does not seek true restoration damages. Defendant notes that plaintiff does not claim that there was any damage to its land or improvements, such as creation of a ditch during the removal of the trees or destruction of any existing road, fence, or structure on its land. Accordingly, in the absence of such claim, plaintiff has failed to establish that it is entitled to restoration damages.
III. Treble Damages
Plaintiff asserts that all damages awarded under RPAPL 861 (1) should be trebled. Plaintiff seeks to treble the sum of $250 per tree and its restoration costs of $33,529.56. In total, plaintiff seeks $112,588.68. Defendant opposes plaintiff’s request and states that treble damages may only be awarded as to stumpage value, which plaintiff waived.
As noted above, under RPAPL 861 (1), “an action may be maintained against such person for treble the stumpage value of the tree or timber or [$250] per tree, or both and for any *382 permanent and substantial damage caused to the land or the improvements thereon as a result of such violation.”
The Third Department in Vanderwerken v Bellinger found that trebling of damages is limited to awards based on stump-age value: “Plaintiffs elected to seek $250 per tree and failed to present any evidence as to the stumpage value of all of the trees taken and destroyed during the harvest. As a result, they are not entitled to treble damages under this statute . . . .” (72 AD3d 1473, 1476 [2010].) The legislative history of the statute supports that interpretation. A memorandum, dated May 12, 2004, from Paul J. Laudato, counsel to the Office of Parks, Recreation and Historic Preservation, to Richard Platkin, counsel to the Governor, states: “Last year the Governor signed into law Chapter 602, which, among other things, provided for increased penalties of between $250 per tree or up to three times the stumpage value of the tree, or both . . . .” (Bill Jacket, L 2004, ch 90 at 9.) Thus, only awards of stumpage value are subject to treble damages.
Here, plaintiff did not seek an award for stumpage value. Accordingly, treble damages will not be awarded.
IV. Costs to Maintain the Action
Plaintiff requests costs and attorneys’ fees, pursuant to RPAPL 861 (2), to be determined at the conclusion of the action. Defendant opposes plaintiff’s request, noting that this section of the statute is inapplicable as it has withdrawn its good faith defense.
RPAPL 861 (1) makes no provision for an award of costs and/or attorneys’ fees. Instead, it allows a plaintiff to seek treble damages. Under RPAPL 861 (2), a defendant is liable for “reasonable costs associated with maintaining an action” and not treble damages where “defendant establishes by clear and convincing evidence, that when the defendant committed the violation, he or she had cause to believe the land was his or her own, or that he or she had an easement or right of way across such land.”
Here, although defendant initially contended that it acted in good faith when it removed the trees, it withdrew that defense. Subsequently, plaintiff successfully demonstrated entitlement to an award under RPAPL 861 (1) for $250 per tree, but not for stumpage value, treble damages or restoration damages. Therefore, the remedies provided under RPAPL 861 (2) are no longer applicable and plaintiff may only recover *383 under RPAPL 861 (1). As subsection (1) does not provide for costs or attorneys’ fees, plaintiff is not entitled to the same.
The court is not persuaded by Vanderwerken, which plaintiff cites in support of its request. In Vanderwerken, the Appellate Division found that the lower court properly concluded that RPAPL 861 (1) applied to the facts of the case. (Vanderwerken at 1475.) Later in its decision, the Third Department stated: “the record is unclear as to why Supreme Court denied plaintiffs’ request for counsel fees. The contract, as well as RPAPL 861, provides that such fees may be awarded in the event of a breach.” (Id. at 1476.)
Attorneys’ fees are generally not recoverable unless they are provided by contract or statute. (Culinary Connection Holdings v Culinary Connection of Great Neck, 1 AD3d 558, 559 [2d Dept 2003].) The Court in Vanderwerken relied primarily on the parties’ contract to determine whether attorneys’ fees should be awarded in that case. This court views the added basis in Vanderwerken, “as well as RPAPL 861,” to be surplusage, which is not binding. (Vanderwerken at 1476.)[5] Accordingly, the court denies an award of costs under RPAPL 861 (1), which is clearly omitted from that subsection.
Summary
Plaintiff’s motion for summary judgment is granted as to liability. Plaintiff shall have judgment for $250 for each of the 10 trees removed from its property. Plaintiff shall have judgment for $125 for each of the five property line trees. Plaintiff may not recover for restoration costs. Plaintiff may not recover costs or attorneys’ fees. Plaintiff shall have judgment for a total of $3,125 plus statutory interest.
Conclusion
Accordingly, defendant’s motion for summary judgment is granted in part. Plaintiff shall settle a judgment on notice in accordance with the foregoing on or before October 9, 2015.

. On August 5, 2015, the instant motion was reassigned from Hon. Peter M. Forman, A.J.S.C. to the undersigned for determination.

. Plaintiff’s survey fails to provide any information regarding the ownership of this land even though the court (Hon. Peter M. Forman, A.J.S.C.) previously noted this deficiency. (Decision and order dated Oct. 7, 2013.)

. Plaintiff does not specify whether the measurement associated with each tree is the diameter of the trunk, the height of the tree, or the span of the tree limbs. In defendant’s opposition, it states: “Plaintiff seeks more than this to replant 16, several of which the trunk could be encircled by one’s hand.” (Affirmation of Christina M. Piracci, Esq. in opp ¶ 17.) Accordingly, the court will infer that these measurements correspond to the diameter of the tree trunk.

. Then Governor George Pataki.

. The court is mindful of the principle set forth in Mountain View Coach Lines v Storms (102 AD2d 663 [2d Dept 1984]), that if a case from another department is “the only New York authority] on point . . . the doctrine of stare decisis requires trial courts in this department to follow precedents set by the Appellate Division of another department until the Court of Appeals or [the Appellate Division of this department] pronounces a contrary rule.” (Id. at 664 [citations omitted].)